# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Martinsburg

**MAIDSTONE ON THE POTOMAC, LLC**
and **BLAIR ROCK, LLC**,

        Plaintiffs,

        v.                   **Civil Action No. 3:08-CV-155**
                                        Judge Bailey

**CSX TRANSPORTATION, INC.**,

        Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before this Court is Defendant's Motion for Summary Judgment (Docs. 35 & 36). The Motion has been fully briefed and is ripe for decision by this Court. In the Motion, the defendant seeks a determination that it owns a certain 4.99 acre tract in fee simple. The plaintiffs contend that the tract is a right of way which has been abandoned, and, if the conveyance in question was a deed conveying the property in fee simple, that the plaintiffs have obtained title to the same by adverse possession.

**Factual Background**

1. By deed dated December 30, 1885, and recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Deed Book No. 93, at page 337, Robert Lemen conveyed 294 acres of land to Jennie Shoop Lemen.

2. By deed dated April 12, 1913, and recorded in said Clerk's office in Deed Book No. 133, at page 469, the heirs at law of Jennie Shoop Lemen conveyed the 4.99

1

acre tract at issue to the Williamsport, Nessle & Martinsburg Railroad Company ("WNMRC").[1]

3. By deed dated April 12, 1916, and recorded in said Clerk's office in Deed Book No. 133, at page 24, the heirs at law of Jennie Shoop Lemen conveyed the property surrounding the tract in question to Frank W. Mish. This deed specifically saves and excepts from the transfer the 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

4. The said Frank W. Mish died testate on November 23, 1939.

5. By deed dated April 19, 1943, and recorded in said Clerk's office in Deed Book No. 172, at page 288, Joseph D. Mish and Frank W. Mish, Jr., as the executors of the Estate of Frank W. Mish, conveyed the property surrounding the tract in question to Mary W. Vernon. This deed specifically saves and excepts from the transfer the 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

6. By deed dated June 3, 1943, and recorded in said Clerk's office in Deed Book No. 172, at page 391, Mary W. Vernon conveyed the property surrounding the tract in question to Frank W. Mish, Jr. and Mary Vernon Mish. This deed specifically saves and excepts from the transfer the 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

7. The said Mary Vernon Mish died intestate on June 1, 1968, leaving as her

---

[1] The Williamsport, Nessle & Martinsburg Railroad Company conveyed the 4.99 acre tract to the Western Maryland Railway Company in 1937. The Western Maryland Railway Company was ultimately merged into CSX Transportation, Inc.

sole heir at law Roy V. Mish, who inherited Mary Vernon Mish's undivided one-half interest, subject to the dower interest of Frank W. Mish, Jr.

8. By deed dated June 13, 1973, and recorded in said Clerk's office in Deed Book No. 269, at page 523, Frank W. Mish, Jr. conveyed his undivided one-half interest to Roy V. Mish. This deed specifically saves and excepts from the transfer the 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

9. On September 20, 2002, in Deed Book No. 712, at page 165, a "Final Plat of Part of Roy V. Mish Tract North of U.S. Route 11" was recorded. The Plat includes a notation titled "Encumbered Area," which reads "Note: It is my opinion that a portion of that certain 4.99 acre tract conveyed to and held in fee by Williamsport and Nessle and Mbg. Ry. Co. by deed recorded in Deed Book 129 on page 469 is within the bounds of this area. However, due to ambiguity in said deed it is impossible to determine the exact location of said 4.99 acre tract."

10. On April 24, 2003, in Deed Book No. 728, at page 440, another plat titled "Part of Roy V. Mish Tract" was recorded. This Plat includes a notation which reads "Note: It is my opinion that a portion of the 4.99 acre tract conveyed unto Williamsport and Nelle and Mbg. R.R. Co. recorded in Deed Book 129 on page 469 is within the bounds of parcel as shown hereon."

11. By deed dated November 25, 2003, and recorded in said Clerk's office in Deed Book No. 749, at page 340, Roy V. Mish conveyed a portion of the property surrounding the tract in question to Watkins Ferry Management Corporation. This deed warrants generally the property transferred except as to the "the portion of the hereinafter

3

described property shown on the hereinafter set forth plat as 'Encumbered'" for which a quit claim was given.

12. By deed dated November 25, 2003, and recorded in said Clerk's office in Deed Book No. 749, at page 343, Roy V. Mish conveyed Parcel #5 as shown on the Final Plat of Part of Roy V. Mish Tract to Watkins Ferry Management Corporation. While the deed provides a general warranty for most of the property conveyed, the deed provides only a quitclaim as to any portion of the property within the boundaries of that certain 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

13. By deed dated December 3, 2004, and recorded in said Clerk's office in Deed Book No. 783, at page 298, Watkins Ferry Management Corporation conveyed the same property as received in the immediately prior deed to Maidstone on the Potomac, LLC.

14. By deed dated May 3, 2005, and recorded in said Clerk's office in Deed Book No. 799, at page 62, Watkins Ferry Management Corporation conveyed Parcel #5 as shown on the Final Plat of Part of Roy V. Mish Tract to Clay D. Blair III. While the deed provides a general warranty for most of the property conveyed, the deed provides only a quitclaim as to any portion of the property within the boundaries of that certain 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

15. By deed dated May 3, 2005, and recorded in said Clerk's office in Deed Book No. 799, at page 64, Roy V. Mish conveyed a portion of the property surrounding the tract in question to Clay D. Blair III. While the deed provides a general warranty for most of the property conveyed, the deed provides only a quitclaim as to any portion of the property

within the boundaries of that certain 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

16. By deed dated January 30, 2007, and recorded in said Clerk's office in Deed Book No. 861, at page 640, Clay D. Blair III and Susanne Blair, his wife, conveyed Parcel #5 as shown on the Final Plat of Part of Roy V. Mish Tract to Robert A. Blair. While the deed provides a general warranty for most of the property conveyed, the deed provides only a quitclaim as to any portion of the property within the boundaries of that certain 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

17. By deed dated March 7, 2007, and recorded in said Clerk's office in Deed Book No. 865, at page 331, Robert A. Blair conveyed Parcel #5 as shown on the Final Plat of Part of Roy V. Mish Tract to Maidstone on the Potomac, LLC. While the deed provides a general warranty for most of the property conveyed, the deed provides only a quitclaim as to any portion of the property within the boundaries of that certain 4.99 acres conveyed to the WNMRC by deed dated July 19, 1913, and recorded in said Clerk's office in Deed Book No. 129, at page 469.

18. By deed dated March 6, 2008, and recorded in said Clerk's office in Deed Book No. 893, at page 79, Clay D. Blair III quitclaimed his right, title and interest in a 5.016 acre tract as shown on the Final Plat of Part of Roy V. Mish Tract to Christopher R. Blair.

19. By deed dated June 5, 2008, and recorded in said Clerk's office in Deed Book No. 903, at page 296, Christopher R. Blair conveyed by special warranty deed the 5.016 acre tract as shown on the Final Plat of Part of Roy V. Mish Tract to Blair Rock, LLC.

**I.     The document in question is a fee simple deed.**

The first issue presented by the briefs in this case is whether that deed dated April 12, 1913, and recorded in said Clerk's office in Deed Book No. 133, at page 469, by which the heirs at law of Jennie Shoop Lemen conveyed the 4.99 acre tract at issue to the Williamsport, Nessle & Martinsburg Railroad Company conveys fee simple title or is a right of way.  The granting clause of the deed reads in pertinent part as follows:

> the said parties of the first part do hereby grant, bargain, sell and convey, and by these presents have granted, bargained, sold and conveyed to and unto the said party of the second part, with general warranty, the following described strip or parcel of land 100 feet wide through the property of the first parties. . ..

In *Grill v. West Virginia Railroad Maintenance Authority*, 188 W.Va. 284, 423 S.E.2d 893 (1992), the West Virginia Supreme Court determined that language in the granting clause of a deed ". . . do hereby sell and grant unto the said Railway a strip of land for a right of way one hundred feet wide. . ." created a fee simple title in the railroad.  In its decision, the Court stated:

> "'In construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith.' Pt. 1, syllabus, *Maddy v. Maddy,* 87 W.Va. 581 [105

S.E. 803] [(1921)]." Syllabus Point 5 of **Hall v. Hartley**, 146 W.Va. 328, 119 S.E.2d 759 (1961).

Syl. Pt 1, **Grill**, *supra*.

In reaching its decision, the **Grill** court also considered the habendum clause, the lack of a reverter, and the fact that the instrument included a covenant of general warranty.

In this case, in addition to there being absolutely no limitation in the granting clause, the instrument contains a covenant of general warranty and also contains the following clauses:

> aforesaid shall be full compensation for the above described property and full satisfaction for all damages that may be caused to the residue of the property of the parties of the first part by reason of the construction, maintenance and operation of said Railroad, and the parties of the first part and their assigns agree to build and maintain a fence on both sides of the right-of-way should they desire the same.

and

> It is understood and agrees that the conveyance of said land includes all riparian rights and privileges, that the parties of the first part have to and in the banks and water of the Potomac River, so far as the property hereby conveyed fronts or abuts on said River.

In **Kilgore v. Cabell County Court**, 80 W.Va. 283, 92 S.E. 562 (1917), the West Virginia Supreme Court held that a deed containing a granting clause which read "do grant . . . for the construction of a double track of railway . . ." conveyed fee simple title to the

7

railroad, which was not affected by the discontinuance of railroad operations on the property and the sale of the land.

The conclusion that this is a fee simple transfer is buttressed by the fact that the 4.99 acres was sold in 1913 for $2,750.00, while three years later the entire remaining 225 acres was sold for $7,800.00.

Based on the foregoing, this Court finds, as a matter of law, that the deed in question conveyed a fee simple interest to the defendant's predecessor in title.

**II.     The elements of adverse possession.**

With the deed in question having been determined to be an instrument conveying fee simple title to the property in question to the Railroad, the plaintiffs assert ownership of the property through the doctrine of adverse possession.  The West Virginia Supreme Court has stated that "[t]he doctrine of adverse possession is firmly established in our property law and accompanies W. Va. Code 55-2-1 [1923] in settling land disputes equitably and efficiently.  This doctrine enables one has been in possession of real property for more than ten years to bring an action asserting that he is now the owner of that piece of property even when title rests in another."  **Brown v. Gobble**, 196 W.Va. 559, 566, 474 S.E.2d 489, 496 (1996), quoting **Naab v. Nolan**, 174 W.Va. 390, 392, 327 S.E.2d 151, 153-154 (1985).

Stated another way, "the doctrine is founded upon a legislative desire to settle land titles and is made manifest by the statute of limitations which bars the right to recover real property."  **Somon v. Murphy Fabricating & Erection Co.**, 160 W.Va. 84, 89, 232 S.E.2d 524, 528 (1977).

"One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title." **Brown**, 196 W.Va. at 566, 474 S.E.2d at 496, quoting Syl. Pt. 3, **Somon,** *supra.*

In this case, the plaintiffs are able to present sufficient evidence from which a jury could find that the possession by the plaintiffs' predecessors in title was actual, open and notorious, exclusive and continuous. The bedrock issues presented by this case are whether the plaintiffs can satisfy the requirements of the statutory duration, hostility and under claim or color of title. This Court will discuss each in turn.

The defendant in this case contends that the plaintiffs are unable to "tack" their ownership with the ownership of their predecessors in title in order to satisfy the statute of limitations. "Where there is privity between successive occupants holding continuously and adversely to the true title holder, the successive periods of occupation may be tacked to each other to compute the required 10-year period of adverse holding." **Brown v. Gobble**, 196 W.Va. 559, 566, 474 S.E.2d 489, 496 (1996), quoting **Roy v. Cunningham***,* 46 Wash. App. 409, 413, 731 P.2d 526, 529 (1986). "[T]acking of periods of possession by successive possessors is permitted against the co-terminous owner seeking to defeat such [claim], unless there is a finding, supported by evidence, that the claimant's predecessor in title did not intend to convey the disputed strip." *Id.*, quoting **Watson v. Price**, 356 So.2d

9

625 (Ala. 1978).

In this case, the plaintiffs may not tack the ownership and actions of the heirs at law of Jennie Shoop Lemen, Frank W. Mish and his estate, Mary W. Vernon, and Frank W. Mish, Jr., inasmuch as each of these persons or entities conveyed the surrounding property specifically excluding the area in question, thereby showing that they did not intend to convey the disputed property.  The plaintiffs may, however, tack to the ownership of Roy V. Mish, since he specifically included the disputed tract in his deeds, albeit with a quitclaim covenant.  Since Roy V. Mish owned the entire property by 1973, the requisite ten year period is satisfied.

Even though the plaintiffs can satisfy the requirements of actual, open and notorious, exclusive and continuous possession for the requisite period, this is not enough, since "[p]ossession alone cannot ripen into title.  It must be based on color or claim." **Pocahontas Coal & Coke Co. v. Bower**, 111 W.Va. 712, 163 S.E. 421, 423 (1932).

"A claim of title has generally been held to mean nothing more than that the disseisor enters upon the land with the intent to claim it as his own.  **Heavner v. Morgan**, [41 W.Va. 428, 23 S.E. 874 (1895)].  Whereas, 'color of title' imports there is an instrument giving the appearance of title, but which instrument in point of law does not.  In other words, the title paper is found to be defective in conveying the legal title.  **Stover v. Stover**, 60 W.Va. 285, 54 S.E. 350 (1906)." **Somon v. Murphy Fabricating & Erection Co.**, 160 W.Va. 84, 91-92, 232 S.E.2d 524, 529 (1977); **Brown v. Gobble**, *supra* at 196 W.Va. 567, 474 S.E.2d 497.

The essence of a claim of title is that the person asserting ownership has for the

requisite statutory period, possessed the property "believing it to be his or her own" (***Brown**, supra*); "with the intent to claim it as his own" (***White v. Lambert***, 175 W.Va. 253, 255, 332 S.E.2d 266, 268 (1985)); "with the intent to claim it as his own" (***Somon**, supra*); "with the intent of depriving the owners . . . of their legal rights" (***Deitz v. Johnson***, 121 W.Va. 711, 6 S.E.2d 231, 235 (1939)).

In this case, each party has presented an affidavit of Roy V. Mish, upon whose intent this factor is based. The affidavit presented by the defendant states that Mr. Mish was generally aware that the railroad had an interest in a section of the property, and that neither he nor his father took any actions to secure ownership of the railroad land or to attempt to deprive the railroad of its interest in the land. (Doc. 36-11).

The plaintiffs' "responsive affidavit" of Roy V. Mish (Doc. 46-2), Mr. Mish attempts to explain his answers as follows:

> k. Paragraph 7 of the First Affidavit states: "*I have been generally aware throughout the entire (sic) of my ownership and my family's ownership of this land that the Williamsport, Nessle, and Martinsburg Railroad had an interest a (sic) section of this land.*" In response, although my family was aware that the railroad company had an interest somewhere within the Mish farm, my family nonetheless entered and used the entire Mish property as if it were our own.
>
> l. Paragraph 9 of the First Affidavit states: *"To the best of my knowledge, other than intermittently grazing animals on the land in which the railroad had an interest, neither I nor my father took any actions to secure ownership of*

11

*the railroad land or to attempt to deprive the railroad of its interest in the land or represent to the public that I or my father owned or controlled the land in which the railroad had an interest."*

i. In response, my family, as described more fully in this Affidavit, used the Mish Farm for other uses, including, but not limited to, fencing, structures, and a sediment pond. To the extent that said uses occurred on property that the railroad company had an interest, then said uses, like the grazing of animals, would also qualify as actions to secure ownership of railroad land.

ii. In response, although neither I nor my father took any specific actions to represent to the public that I or my father owned or controlled land in which the railroad had an interest, said actions were unnecessary because the public believed that the Mish Family owned the entire Mish farm given how the Mish Family used the Mish Farm, as said uses are more particularly described in this affidavit.

These affidavits fall far short of demonstrating that Roy V. Mish intended to claim the property as his own. Rather, they show that Mr. Mish was aware of and respected the railroad's ownership of the property. The fact that Mr. Mish possessed and used the property, in the absence of the intent to claim it as his own, does not establish adverse possession. As noted above, "[p]ossession alone cannot ripen into title. It must be based on color or claim." ***Pocahontas Coal & Coke Co. v. Bower***, 111 W.Va. 712, 163 S.E. 421, 423 (1932).

The plaintiffs are also unable to establish the requisite hostility. In order to establish

"hostility," "the person claiming adverse possession must show that his possession of the property was against the right of the true owner and is inconsistent with the title of the true owner. The word 'hostile' is synonymous with the word 'adverse' and need not and does not import that the disseisor must show ill will or malevolence to the true owner." ***Somon v. Murphy Fabricating & Erection Co.***, 160 W.Va. 84, 90, 232 S.E.2d 524, 528 (1977); *See* ***Brown v. Gobble***, 196 W.Va. 568, 474 S.E.2d 498; ***Elder v. Smith***, 196 W.Va. 660, 662, 474 S.E.2d 590, 592 (1996).

"If the use of the land in dispute is permissive, the element of hostility or adversity is negated. 'It is elementary that adverse possession cannot be permissive. . .. Permissive possession is not considered to be the possession of the occupant but is considered to remain the possession of the party on whose pleasure the permissive possession depends.'" 3 Am.Jur.2d *Adverse Possession* § 52 (1986) (footnotes omitted) [***Somon****, supra.*] Furthermore, no matter '[h]owever exclusive and however long endured, permissive possession can never ripen into title against anyone. . ..'" ***Fantasia v. Schmuck***, 183 W.Va. 361, 363, 395 S.E.2d 784, 786 (1990).

In this case, no evidence has been presented that would negate the very real indication that the plaintiffs' predecessors use of the property was permissive. The railroad purchased the property to construct a rail line that never came to fruition. It is very conceivable that the landowners were told that until such a line was built, they could continue to farm on the property.

This concept is buttressed by the fact that, according to the affidavit of Roy V. Mish (Doc. 36-11), an employee of the railroad visited the property to measure the boundaries

of the railroad's property. According to Mish, the employee explained that the railroad held the property and offered it as security in other railroad transactions.

Inasmuch as the railroad was using the property to offer as security and inasmuch as the rail line never came to fruition, the use of the property by Mr. Mish for farming would not be inconsistent with the title of the true owner nor against the right of the true owner.

For the reasons stated above, the Defendant's Motion for Summary Judgment **(Docs. 35 & 36)** is **GRANTED**. Accordingly, this matter is hereby **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is **DIRECTED** to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record herein.

**DATED:** July 28, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE